# DEPARTMENT OF INSURANCE AND TREASURER v NATIONAL BENEFIT LIFE INSURANCE COMPANY

## Case No. 87-5436

State of Florida, Division of Administrative Hearings

August 12, 1988

### APPEARANCES OF COUNSEL

**Gabriel Mazzeo, Richard W. Thornburg, Susan K. Stafford,** for petitioner.

**Douglas A. Mang, Charles T. Collette, Edward W. Dougherty, Jr., R. David Prescott, and Stephen R. Herbert,** for respondent.

### OPINION OF THE COURT

DIANE K. KIESLING, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, a formal hearing was held in Tallahassee,

Florida, on May 4 and 5, 1988, before the Division of Administrative Hearings, by its designated Hearing Officer, Diane K. Kiesling.

The issues are 1) whether Respondent's certificate of authority should be revoked or otherwise penalized based on the acts and violations alleged in the Notice to Show Cause; and 2) whether a cease and desist order should be entered as asserted in the Notice to Show Cause.

Petitioner, Department of Insurance (Department), presented the testimony of Gail Connell and Richard W. Mizerski, an expert in advertising in the areas of deceptive and misleading advertising and promotional materials. Petitioner's Exhibits 2-5, 6A-6D, and 7 were admitted into evidence. Respondent, National Benefit Life Insurance Company (National Benefit), presented the testimony of Kenneth M. Beck, Joseph H. Plante, Donald Lee Nettles, Sr., Johnny Luten, and Phillip E. Downs, an expert in deceptive and misleading advertising. Petitioner called Joseph H. Plante as a rebuttal witness and Respondent recalled Kenneth M. Beck on surrebuttal. Respondent's Exhibits 1-11, 13-18, 27, 36, 49-41, and 43 were admitted into evidence, but was withdrawn by Respondent in the course of the hearing. Respondent's Exhibits 44 and 45 and Supplemental Exhibits 8, 10 and 11 are admitted after the hearing by agreement of the parties.

The transcript of the proceedings was filed on June 27, 1988. By agreement of the parties, the proposed findings of law and conclusions of law were to be filed on July 8, 1988, eleven days following the filing of the transcript, thereby waiving the requirements of Rule 28-5.402, *Florida Administrative Code,* pursuant to Rule 22I-6.031(2), *Florida Administrative Code.* Petitioner timely filed same, but Respondent filed its proposed findings of fact and conclusions of law on July 11, 1988. Because Petitioner has not objected to the untimely filing, Respondent's proposed findings of fact have been considered. All proposed findings of fact and conclusions of law have been considered. Specific rulings have been made on each proposed finding of fact in the Appendix attached hereto and made a part of this Recommended Order.

### FINDINGS OF FACT

1. National Benefit is a foreign corporation incorporated under the laws of the District of Columbia, organized for profit, and doing business in several states, including the State of Florida.

2. National Benefit is authorized to write insurance in the State of Florida.

3. Insurance Marketing Corporation (IMC) operates as the market-

180

ing arm for Associated Direct Marketing Services (ADMS), which in turn is an affiliate of National Benefit and functions as the marketing company for National Benefit. IMC prepares all of National Benefit's direct response marketing, including the advertisement at issue in this case.

4. National Benefit is fully responsible for advertisements prepared by IMC.

5. National Benefit has advertised and is currently advertising insurance products, through the television medium, which are received by residents of the State of Florida. One such product is known as "Security Life TM."

6. The television advertising at issue in this case is referred to as IMC-103 and is a television commercial featuring Dick Van Dyke as the compensated spokesperson.

7. Van Dyke states: "that National Benefit Life has found a way for you to get the protection you need . . . at a price you really can afford. Just $3.95 a month. . . ." At this point in the advertisement, superimposed on the screen are the words: "$3.95 a month (per unit)"

8. At no time during this advertisement is there either an explanation of the use of units in which a common premium is specified or a description of varying benefit amounts according to age.

9. During the advertisement, Van Dyke states that a forty-five (45) year old male consumer can obtain forty thousand dollars ($40,000.00) of coverage for just sixty-five cents ($.65) a day. However, the implication is that such coverage can be obtained for a monthly premium of three dollars and ninety-five cents ($3.95) because this figure is prominently displayed twice on the screen and Van Dyke mentions this figure twice within a 120-second period.

10. In reality, the consumer must purchase five (5) units of insurance at a monthly premium of nineteen dollars and seventy-five cents ($19.75) to be eligible for the forty thousand dollars ($40,000) benefit advertised.

11. At the advertised premium of three dollars and ninety-five cents ($3.95) (one unit) per month, a forty-five (45) year old male consumer would receive benefits of only six hundred ($600.00) in Term Life benefits if he dies a natural death of age seventy (70) while having paid in seven hundred eleven dollars ($711.00).

12. A forty-five year old consumer purchasing five (5) units would obtain a forty thousand dollars ($40,000.00) benefit *only* if the consum-

er's death was caused by a covered accidental bodily injury and only after the first tow years of coverage.

13. The amount of coverage decreases as the policyholder's age increases.

14. Death benefits are limited to premiums paid during the first two (2) years of coverage if death is caused by *other* than accidental bodily injury.

15. The advertisement contains a 14-word superimposed summary of limitations on benefits which appear on the screen for approximately two (2) seconds. At the same time that the summary of limitation appears on the screen, Van Dyke is discussing something unrelated to the summary of limitations. There is no other explanation of these terms.

16. A person of average education or intelligence cannot be expected to read or comprehend the aforementioned summary within the two (2) second period in which the summary appears on the screen. In fact, the undersigned was able to read only the first five words when the advertisement was shown.

17. Van Dyke also states during the aforementioned advertisement, "Big Dollars Benefits."

18. Using Van Dyke's example given in the advertisement, *i.e.,* forty thousand dollars ($40,000.00) of coverage, a forty-five (45) year old male would have to purchase five (5) units of insurance, keep the policy in force, die before age forty-nine (49), and die as a result from all other causes, within ninety (90) days of the accident. None of these factors are mentioned in the advertisement.

19. Likewise, a forty-five (45) year old male could purchase five (5) units of insurance, keep the policy in force until his natural death at age sixty (60), and have paid National Benefit a total premium of three thousand five hundred fifty-five dollars ($3,555.00), yet the policy would pay, because of decreasing benefits, a total benefit of only three thousand dollars ($3,000.00).

20. The advertisement indicates "guaranteed acceptance" by superimposition and spoken text without explaining the limitations on benefits in a manner contiguous to and as prominent as the term.

21. Taken as a whole, IMC-103 is deceptive and misleading advertising and has the capacity or tendency to mislead or deceive either by fact or implication.

22. After the Notice and Order to Show Cause was received by

**182**

National Benefit in November, 1987, it continued to run the subject advertisement on local television stations until February, 1988.

23. The advertisement, when cancelled, was cancelled for poor response.

24. National Benefit re-entered the spot market in Florida with this advertisement subsequent to its cancellations.

25. National Benefit continues to show a commercial almost identical to IMC-103 available for viewing in Florida by Cable T.V.

26. National Benefit had actual notice of and access to the rules of the Department of Insurance regarding advertising, Chapter 4-35, *Florida Administrative Code.*

27. National Benefit has a "compliance manual," but does not always follow the requirements set out in that manual.

28. Repeated references to age and health emphasize the aspects of the policy which pay for death by natural causes over death by accident.

29. The advertisement neglects objective information and obfuscates elements of cost.

30. Taken as a whole, there is both direct and circumstantial evidence of a knowing intent to make a distorted presentation and to present less than a full, fair and accurate explanation of the policy through this televised advertisement.

31. The advertisement involves a compensated person and includes identification of various toll free telephone numbers which Florida residents are encouraged to use in order to receive additional information concerning the advertised insurance product.

32. As a result of receiving a telephone inquiry from Florida residents, National Benefit also solicits its insurance products via U.S. Mail by sending consumers information packets called fulfillment kits containing various written material concerning its advertised product.

33. At the time a consumer views the television advertisement, the consumer does not have the fulfillment kit available.

34. The television advertisement is a separate advertisement and may in itself be deceptive and misleading.

35. The television ad contains an "800" number that viewers can call to receive a fulfillment kit.

36. The fulfillment kit contains an application for insurance.

183

37. Once consumers receive a fulfillment kit, if they wish to purchase insurance, they fill out the application and send it to the company.

38. Because the next item received from the viewing of the T.V. commercial contains an application form, it is possible to purchase the insurance solely on the basis of Van Dyke's representations as to premiums and benefits.

39. The statements of Van Dyke went beyond the parameters authorized in Rule 4-35.008, *Florida Administrative Code,* and constituted solicitation.

40. Explanation of policy provisions including quotation of premiums and benefits are acts performed by a licensed agent and constitute solicitation.

41. Van Dyke described coverages, benefits and premiums, and in doing so is acting as an insurance agent for National Benefit.

42. Van Dyke is not licensed as an insurance agent in the State of Florida.

43. No action has been brought by the Department against Van Dyke and Van Dyke is not a party to this action.

44. Joe Plante, Vice-President of Direct Response Advertising Compliance for IMC, keeps up with the current rules and regulations of state insurance departments as they occur. In order to carry out this responsibility, Mr. Plante has a set of ACLI manuals relating to group insurance which are updated on a daily basis. He receives updates to the National Law Services Manual, and he attends regular NAIC meetings and ad hoc NAIC meetings, including the Delaware Valley Ad Hoc Committee.

45. NAIC is an acronym for National Association of Insurance Commissioners. It meets three times per year for a day or two days for the purpose of discussing compliance issues.

46. Mr. Plante also determines where advertising can be viewed and aired. In carrying out this responsibility he often requires that advertising materials be modified to comply with state regulations and he has taken advertising to the Florida Department of Insurance to be reviewed prior to use since 1981, even though such a review is not required by the Department.

47. When a company submits an advertisement for review by the Department, if the analysts do not find any apparent violations, their usual procedure is to stamp the advertisement "Filed" and return a copy to the company.

184

48. The same procedure may or may not be followed after apparent violations noted by the analysts have been corrected by the company.

49. After a company has made all changes in its advertising requested by the Department, the Department's file is closed.

50. Closing the file means that the advertising appears to be in compliance with applicable statutes and rules.

51. A file may be reopened at any time.

52. On November 25, 1986, Plante met with Department personnel regarding a television advertising script identified as IMC-115 and a fulfillment kit which the company planned to mail to viewers responding to the advertisement.

53. Mr. Plante did not supply the Department with a videotape of the ad.

54. The Department personnel took the advertising material to review and agreed to meet with Mr. Plante later that same day to offer their comments.

55. The supervisor of the analyst who reviewed IMC-115 told the analyst, in front of Mr. Plante, that he should review the T.V. script and solicitation letter only.

56. The fulfillment kit and videotapes were not reviewed at that time.

57. At the second meeting on November 25, 1986, Department personnel suggested various changes be made to the television advertising material which had been submitted.

58. Mr. Plante returned to his office in Pennsylvania and directed that the changes suggested by the Department be incorporated in the television advertisements, with one exception.

59. The Department's request that the compensated endorser's statement that "no agent will come to your home" be eliminated was not complied with because this would have entailed refilming the advertisements.

60. On January 30, 1987, Mr. Plante submitted a videotape of a television advertisement identified as IMC-103 to the Department with a cover letter indicating that the requested changes had been made.

61. IMC-103 is very similar to IMC-115, but not identical.

62. No script was provided for IMC-103.

63. On February 20, 1987, Department personnel sent a letter to Mr. Plante which states in part: "Once we have resolved this matter, the

**185**

material *appears to be in compliance with Florida advertising rules and regulations."*

64. Department personnel had not reviewed the videotape of IMC-103 prior to sending the letter.

65. The television advertising identified as IMC-103 contains the words "Big dollar benefits," which were not contained in the script presented to the Department for review on November 25, 1986, and identified as IMC-115.

66. The Department closed its file on March 23, 1987.

67. The compliance manual developed in September, 1986, by Mr. Plante for IMC states that Florida prohibits use of the term "No agent will call" and "No medical exam." However, the term "no agent will come to your home" was included in both IMC-115 and IMC-103.

68. The manual contained these admonitions at the time IMC-115 was submitted to the Department for review.

69. IMC began broadcasting IMC-103 in March, 1987, without further changes and spent in excess of $350,000.00 in broadcasting IMC-103 over the next year.

70. In September, 1987, the Department began a review of medicare supplement and life and health insurance advertising. Department personnel were directed to obtain copies of the scripts and videotapes of insurance television advertisements, to review them, and to send the analysts' reviews to the legal office.

71. In conjunction with this departmental review, Plante supplied the materials related to IMC-103.

72. This action is a result of the September, 1987, investigation.

73. Between March, 1987, when the Department closed its file on IMC-103 and November, 1987, when this action was brought, the Department clearly changed its policy regarding what statements by compensated endorsers constitute solicitation and what statements constitute an invitation to inquire.

74. The Department has initiated rulemaking to reflect the Department's current policy in its rules.

75. There is no definition of what constitutes deceptive or misleading advertising in the department's rules.

76. In this case, both parties offered expert testimony of what the appropriate definition is.

77. National Benefit's expert, Phillip E. Downs, acknowledged that

186

there are different definitions of deceptive advertising. The definition he supports is that advertising is considered to be deceptive if it includes untruthful claims that create belief levels in individuals that result in some purchase behavior that would result in some harm or damage to the consumer. Essentially, Downs' definition contains three elements: 1) requires that the advertisement contains statements which are untrue, and 2) which are believed by the consumer, 3) resulting to damage to the consumer.

78. This definition is rejected as it does not conform to the statutory framework which recognizes that an advertisement can be either unture, deceptive *or* misleading. Additionally, there is no statutory prerequisite involving the need to show damage to the consumer.

79. Instead, the definition used and applied by the Department's expert, Richard W. Mizerski, is accepted and credited and it has been applied herein. That definition requires that the viewer be lead to believe things that are not true and it involved four factors: the probability of deception, the characteristics of the targeted audience, the materiality of the information, and the way the information is presented. An advertisement is deceptive if individuals have the capacity of taking away an understanding that is not based on reality or if they come away with a perception that is not realistic, given what the real situation is. It includes deception by omission. There is no necessity that actual injury occurs, but there must be a possibility of injury.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction of the parties to and the subject matter of this proceeding. Section 120.57(1), *Florida Statutes.*

By its Notice and Order to Show Cause, the Department seeks to do two things. First, it charges National Benefit with numerous violations of statute and rule and it seeks to impose various penalties for these violations. Second, it seeks entry of a cease and desist order, ordering National Benefit to cease engaging in any unfair method of competition or in any unfair or deceptive act or practice.

As to the disciplinary portion of the case, the Department charged National Benefit with the following violations of statutes and rules.

Section 626.051 "Life agent" defined.—

(1) For the purpose of this part, a "life agent" is one representing an insurer as to life insurance and annuity contracts. The term also includes an agent appointed as such as to life insurance, fixed dollar

**187**

annuity contracts, variable contracts, and health insurance contracts by the same insurer.

(2) Except as provided in § 626.112(4), with respect to any such insurances or contracts, no person shall, unless licensed as an agent:

(a) Solicit insurance or annuities or procure applications; or

(b) In this state engage or hold himself out as engaging in the business of analyzing or abstracting insurance policies or of counseling or advising or giving opinions to persons relative to insurance or insurance contracts other than:

1. As a consulting actuary advising an insurer; or

2. As to the counseling and advising of labor unions, associations, trustees, employers or other business entities, the subsidiaries and affiliates of each, relative to their interests and those of their members or employees under insurance benefit plans.

Section 626.051 is allegedly made applicable to National Benefit through Rule 4-35.002(2), *Florida Administrative Code,* as follows:

(2) Every insurer shall establish and at all times maintain a system of control over the content, form and method of dissemination of all advertisements of its policies or contracts. All such advertisements, regardless of by whom written, created, designed or presented, shall be the responsibility of the insurer whose policies or contracts are so advertised.

Violation of Section 626.112 is also charged.

Section 626.112 License required; agents, solicitors, adjusters, insurance agencies.—

(1) No person shall be, act as, or advertise or hold himself out to be an insurance agent or solicitor or adjuster unless he is currently licensed by the department.

Section 626.112(1) is again allegedly made applicable to National Benefit through Rule 4-35.002(2), *supra.*

Additional violations charged are:

Section 626.9521 Unfair methods of competition and unfair or deceptive acts or practices prohibited.—

No person shall engage in this state in any trade practice which is defined in this part as, or determined pursuant to § 626.9561 to be, an unfair method of competition or an unfair or deceptive act or practice involving the business of insurance. Any person who violates any provision of this part shall be subject to the penalties provided in § 627.381.

Section 626.9541 Unfair methods of competition and unfair or deceptive acts or practices defined.—

(2) UNFAIR METHOD OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.— The following are defined as unfair methods of competition and unfair or deceptive acts or practices:

* * *

(b) False information and advertising generally.—

Knowingly making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public:

1. In a newspaper, magazine, or other publication,

2. In the form of a notice, circular, pamphlet, letter, or poster.

3. Over any radio or television station, or

4. In any other way,

an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance, which is untrue, deceptive, or misleading.

The Department also charged the following rule violations from Chapter 4-35, *Florida Administrative Code.*

4-35.004 Method of Disclosure of Required Information. All information required to be disclosed by these rules shall be set out conspicuously and in close conjunction with the statement to which such information relates or under appropriate captions of such prominence that it shall not be minimized, rendered obscure or presented in an ambiguous fashion or intermingled with the context of the advertisement so as to be confusing or misleading.

4-35.005 Form and Content of Advertisements.

(1) The format and content of an advertisement of a life insurance policy or annuity contract shall be sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive. Whether an advertisement has a capacity or tendency to mislead or deceive shall be determined by the Commissioner of Insurance from the overall impression that the advertisement may be reasonably expected to create upon a person of average education or intelligence, within the segment of the public to which it is directed.

(2) Advertisements shall be truthful and not misleading in fact or in implication. Words or phrases, the meaning of which is clear only by

189

implication or by familiarity with insurance terminology, shall not be used.

4-35.006 Advertisements of Proceeds Payable, Premiums Payable, or Limited, Grades or Modified Features.

(1) Deceptive Words, Phrases or Illustration Prohibited.

(a) No advertisement shall omit information or use words, phrases, statements, references or illustration if such omission or such use has the capacity, tendency or effect of misleading or deceiving purchasers or prospective purchasers as to the nature or extent of any policy or contract benefit payable, loss covered or premium payable. The fact that the policy or contract offered is made available to a prospective insured for inspection prior to consummation of the sale or an offer is made to refund the premium if the purchaser is not satisfied, does not remedy misleading statements.

* * *

(f) A full explanation must be made of the use of units in which a common premium is specified and varying face amounts according to age are described.

(2) Limited, Graded or Modified Features.

(a) An advertisement for a policy or contract containing graded, modified or other limiting benefits shall fairly and accurately describe such negative features.

The issues of fact and law raised by the allegations can be divided into three general headings:

1. Use of a Compensated Spokesperson

2. Unfair or Deceptive Acts or Advertising

3. Estoppel

*Use of a Compensated Spokesperson*

As set forth in the Findings of Fact, the Department has changed its policy regarding what statements by compensated spokespersons are solicitation requiring licensure in Florida and what statements are merely an invitation to inquire. Clearly, National Benefit voluntarily submitted a script similar to IMC-103 to the Department and, prior to March, 1987, the Department found no apparent violation in the statements made by Dick Van Dyke. Apparently some time after March, 1987, and before September, 1987, the Department changed its policy and began to define solicitation by a compensated endorser to include any statements regarding benefits or premiums. The Depart-

190

ment is asserting that what was not an apparent violation in March, 1987, had become an apparent violation by the time this Notice and Order to Cease and Desist was filed, even though the statute and rule had not changed.

An agency is not required to announce a new policy in a rulemaking proceeding. However, rulemaking is preferable where an "established industry wide policy is being altered." *Florida Cities Water Co. v Florida Public Service Commission,* 384 So.2d 1280 (Fla. 1980).

> Notwithstanding the continued availability of adjudication as a means of . . . policy development, . . . this is a case of policymaking for which rules are preferable to orders. [citations omitted] That is so, first, because "established industry-wide policy is being altered" by imposition of new restraints on heretofore common but unregulated industry practice, (citations omitted) and second, because rules make policy prospectively after notice, whereas orders extract policy from events viewed retrospectively, and a licensee discipline order under Section 120.60 has the added potential of assessing severe and judicially unreviewable penalties for violation of a statutory norm made explicit only by the disciplinary order.

*Anheuser-Busch, Inc. v Department of Business Regulation,* 393 So.2d 1177, 1181 (Fla. 1st DCA 1981). In the *Anheuser-Busch* case, the court refused to permit an agency to impose license discipline "for violation of rather general, morally neutral, and somewhat technical statutory standards which the order makes explicit only retrospectively and only in terms of the discrete facts at hand." *Id.* at 1181. Essentially that court concluded that the fairness of the proceeding or the correctness of the action would be in doubt

> when substantial private interests are to be determined entirely by retrospective policymaking through adjudication, and the conduct in question is such that the licensee likely would have conformed to any agency standard of which it had notice rather than incur the . . . burdens of disciplinary action.

*Id.* at 1181.

Such is the case here as it relates to allegations that National Benefit should be penalized because Dick Van Dyke solicited insurance without being licensed in Florida. Such a determination requires retrospective application of the new policy which, in turn, alters the established policy which the Department had been applying on an industry-wide basis. Under the new policy, Dick Van Dyke's statements constitute solicitation and not simply endorsement; however, said acts may not be concluded to have violated the penal statutes, Sections 626.051 and

**191**

626.112, because National Benefit could not have known that the acts constituted violations at the time of the act. This is particularly so since National Benefit obtained at least a cursory review and acquiescence for the ad in March, 1987.

One additional impediment exists to imposition of sanctions for the statements made by Dick Van Dyke. Dick Van Dyke is not a party to this action and in fact has never been served with the complaint. Section 626.112, which sets forth the prohibited actions, specifically makes it an offense for a person to advertise himself to be an insurance agent unless he is currently so licensed. Section 626.051 merely defines who is defined to be a "life agent" and provides that no person shall solicit insurance or hold himself out as engaging in analyzing or abstracting insurance policies unless that person is licensed.

There is no interpretation of either Section 626.051 or 626.112 which carries the liability for such actions from the person specified to the company on whose behalf he is acting. The Department seeks to expand the scope of the liability by applying its Rule 4-35.002(2). However, that rule simply makes the insurer responsible for the content and design of the advertisements of its products. Such a general rule cannot be relied on to expand the scope of a penal statute in order to broaden the range of persons who may be held liable for certain specified acts. The Department cannot sustain a charge that the insurer has violated those statutory sections, when it was the acts of a specific person that were in violation and when that person has not been made a party or charged.

For both of the above-specified reasons, it is concluded that the charges that National Benefit violated Section 626.051 and 626.112 should be dismissed. Further, the Department did not seek a cease and desist order to prohibit National Benefit from permitting Dick Van Dyke from soliciting insurance without being licensed. Hence no cease and desist order may be issued on this subject regarding IMC-103.

*Unfair or Deceptive Acts or Advertising*

The Department charged National Benefit with two statutory violations and with seven violations of rules or subsections of rules; however, all of the alleged violations relate to unfair or deceptive acts or advertising.

Section 626.9521 prohibits any person from engaging in an unfair or deceptive act or practice involving the practice of insurance. What constitutes unfair or deceptive acts as related to this case is defined in Section 626.9541(1)(b) and in Rules 4-35.004, 4035.005(1) and (2), and 4-35.006(1)(a) and (f) and (2)(a).

Based upon the foregoing Findings of Fact, it must be concluded that IMC-103 is deceptive and misleading; that statements made in IMC-103 are deceptive and misleading; that portions of IMC-103 are confusing or misleading; that the format and content of IMC-103 is deceptive and misleading and has the capacity or tendency to mislead; that IMC-103 is misleading in implication; that IMC-103 used words or phrases,the meaning of which is clear only by implication; that IMC-103 omits information or uses statements or illustrations which have the capacity, the tendency and the effect of misleading or deceiving prospective purchasers; that IMC-103 does not explain the use of units; and that IMC-103 does not fairly or accurately describe the limits and the negative features of the policy. However, Section 626.9541, which forms the basis for all of the alleged rule violations, specifically requires that the insurer "knowingly" make or disseminate the deceptive or misleading advertisement.

National Benefit argues that the requisite knowledge is the same as "scienter" and requires proof that the insurer knew that the advertisement was untrue, deceptive or misleading. This argument is rejected. Scienter generally implies guilty knowledge. The requisite knowledge here is knowledge of a state of facts which it was the Respondent's duty to guard against. National Benefit's omission to do so leads to the violations which are charged. This definition of scienter, as applied to this case, is consistent with the definition in *Black's Law Dictionary* (5th ed. 1979). "Knowingly" does not require specific intent to violate the law, even under criminal statutes. When the legislature has sought to define "knowingly" in criminal statutes, it has specified that it means "having general knowledge of, reason to know, or a belief or ground for belief which warrants further inspection or inquiry or both." *See, e.g.,* Sections 847.012, 847.0125 and 847.013, *Florida Statutes* (1987).

Finally, the First District Court of Appeal, in *Tri-State Systems, Inc. v Department of Transportation,* 500 So.2d 212 (Fla. 1st DCA 1986), construed the word "knowingly" to exclude from its ambit a false or misleading statement in an application that was inadvertently, mistakenly, or negligently made. While the facts of that case and the statutory language at issues therein can be distinguished from the present case, nevertheless, the exclusion specified by that court is of some assistance here.

From a review of the evidence presented and facts found in this case, it must be concluded that National Benefit knew that certain elements of its advertisement were in violation of the statutes and rules. For example, National Benefit must have known that no person of average

intelligence would be able to read the fourteen-word limitation clause in the 2 seconds it was displayed on the screen, especially when the spokesperson on the screen was making unrelated statements at the same time. Similarly, National Benefit used the term "units" and did not explain the term, even though it had knowledge of and access to the Department's rules that clearly require a full explanation of the use of units. As another example, National Benefit knew that the illustration used of $40,000 in benefits would have the tendency or effect of misleading older persons (the targets of the advertising) into believing that they, too, could provide such "Big Dollar Benefits" to their spouses and families, when in fact any benefit to which they may be entitled would almost surely be much smaller. These are only examples of the ways in which IMC-103 is deceptive or misleading. However, none of these representations can be considered "inadvertently, mistakenly or negligently" made. The sum total of the obvious ways in which IMC-103 is deceptive or misleading and violates the specific standards in Rules 4-35.004, 4-35.005, and 4-35.006, is sufficient to constitute clear and convincing evidence that National Benefit prepared and disseminated a deceptive and misleading advertisement as it did, knowing its contents and probable effect on the target audience.

Therefore, it is concluded that National Benefit is guilty of violating Sections 626.9521 and 626.9541(1)(b), and Rules 4-35.004, 4-35.005, and 4-35.006(1)(a) and (f) and (2)(a).

*Estoppel*

National Benefit also argues that the Department is estopped from asserting that IMC-103 violates Florida law because of the Department's review of the advertisement in 1986 and early 1987. Again, this argument is rejected.

"As a general rule, equitable estoppel will be applied against the state only in rare instances and under exceptional circumstances. [citations omitted]. Another general rule is that the state cannot be estopped through mistaken statements of the law. [citations omitted]." *State Department of Revenue v Anderson,* 403 So.2d 397, 400 (Fla. 1981). The three requires elements of estoppel are:

1. A representation as to a material fact that is contrary to a later asserted position.

2. Good faith reliance on that representation.

3. A substantial change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.

*See, e.g., Anderson, supra; Reedy Creek Improvement District v State*

194

*Department of Environmental Regulation,* 486 So.2d 642 (Fla. 1st DCA 1986); *Tri-State Systems v Department of Transportation,* 500 So.2d 212 (Fla. 1st DCA 1986).

The change in position must be substantial or the party claiming estoppel must have incurred "excessive obligations and expenses so that it would be highly inequitable and unjust to destroy the right acquired." *Reedy Creek, supra* at 646. *See, also, The Florida Companies v Orange County, Florida,* 411 So.2d 1008 (Fla. 5th DCA 1982). While the application of "equitable estoppel does not depend on absolute, binding, final approval from the governmental body," reliance on preliminary approval must be both justified and in good faith. Further, the preliminary approval relied on must be part of the governmental body's official actions. *The Florida Companies, supra* at 1011. Finally, "estoppel will not apply to 'transactions that are forbidden by statute or that are contrary to public policy.' " *Reedy Creek, supra* at 647.

In applying these statutory standards to the facts of this case, it is concluded that the Department is not estopped from bringing this action. First, the advertisement which the Department reviewed, by reference to only a script, was not the same as IMC-103. Changes were then made to that advertisement to correct some apparent violations. One apparent violation was not corrected. Later, a videotape of IMC-103, without a script, was mailed to the Department. An additional problem was found in IMC-103. By letter, the Department advises National Benefit that once that problem was resolved, the material "appears to be in compliance with Florida advertising rules and regulations." This statement does not rise to the level of preliminary approval, particularly since it is not part of an official review process which has published procedures and standards. Even if it did constitute preliminary approval, it is the result of a mistake of fact on the part of the Department which in turn resulted from misrepresentations by Plante on behalf of National Benefit. Plante led the Department to believe that the videotape he submitted on January 30, 1987, namely IMC-103, was the same as the script previously submitted and that certain changes had been made. In fact, there were some differences between the script for IMC-115 and the videotape for IMC-103.

One other required element for estoppel is either a substantial change in position or the incurring of excessive obligations and expenses o that it would be highly inequitable and unjust for the Department to now change positions. In addition to failing to adequately meet the first element, National Benefit has failed to prove anything in regard to the third element. No evidence was submitted to show that National Benefit made any substantial change in its position. The advertisement

was already filmed and ready to be used in the television markets of Florida prior to its submission in videotape form on January 30, 1987. No changes were required or made to the videotape. National Benefit did not change its position in reliance on the statement in the February 20, 1987, letter from the Department. It simply began running the advertisement, which had been the ultimate goal throughout the Department's voluntary review. In fact, National Benefit incurred no additional obligations or expenses as a result of the February 20, 1987, letter. There is no inequity or injustice in the Department's current action.

Hence, it is concluded that equitable estoppel has not been proved by National Benefit and it is not entitled to that defense in this action.

## *RECOMMENDATION*

RECOMMENDED that the Department of Insurance, through the Insurance Commissioner, enter a Final Order and therein:

1. Find National Benefit Life Insurance Company guilty of violating Sections 626.9521 and 626.9541 and Rules 4-35.004, 4-35.005, and 4-35.006(1)(a) and (f) and (2)(a).

2. Dismiss the charges that National Benefit Life Insurance Company violated Sections 626.051 and 626.112.

3. Impose an administrative penalty of $10,000.00 against National Benefit Life Insurance Company for the above mentioned violations.

4. Find that the compensated spokesperson in IMC-103 does solicit insurance.

5. Order National Benefit Life Insurance Company to cease and desist from using IMC-103 in Florida.

DONE AND ENTERED this 12th day of August, 1988 in Tallahassee, Leon County, Florida.